## Case No. 10,590.

### ORR v. LITTLEFIELD et al.

[1 Woodb. & M. 13: [1] 8 Law Rep. 314; 2 Robb, Pat. Cas. 323.]

Circuit Court, D. New Hampshire. Oct. Term, 1845.

PATENTS—PROVISIONAL INJUNCTION BEFORE HEARING — UNDISTURBED POSSESSION AND USER OF PATENT RIGHT — OTHER RECOVERIES FOR INFRINGING SAME PATENT—ANSWER.

1. In a suit in equity for the violation of a patent right, an injunction will not be granted before a hearing upon the merits, merely upon proof that the complainant has obtained a patent.
[Cited in Woodworth v. Rogers, Case No. 18,-018.]

2. But proof of undisturbed possession and user of the patent right, for a reasonable length of time, by the complainant, is ground for granting an injunction.
[Cited in Hovey v. Stevens, Case No. 6,745; Pierpont v. Fowle. Id. 11.152; Orr v. Merrill, Id. 10,591; Woodworth v. Rogers, Id. 18,018; Foster v. Moore, Id. 4.978; Hussey v. Whitely, Id. 6,950; Sargent v. Seagrave, Id. 12.365; Hockholzer v. Eager, Id. 6.556; White v. Heath, 10 Fed. 293.]

3. It is also ground for granting an injunction, that the complainant has prosecuted other per-

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

sons for violations of the same patent, and recovered judgment against them; and it makes no difference that such judgment was rendered by agreement of parties, where there was no collusion, or under a specification of this patent, which has been surrendered as defective, and a new one taken out.
[Cited in Potter v. Holland. Case No. 11,330; Orr v. Merrill, Id. 10,591; Woodworth v. Hall. Id. 18,016; Platt v. McClure, Id. 11.218; McWilliams Manuf'g Co. v. Blundell, 11 Fed. 422.]

4. An injunction will not be dissolved, as a matter of course, on the coming in of the answer, denying the equity of the bill, if the complainant has adduced auxiliary evidence of his right, as in the present case.
[Cited in Hussey v. Whitely, Case No. 6,950; Woodworth v. Rogers. Id. 18,018.]
[Cited in Conover v. Ruckman, 34 N. J. (Eq.) 297.]

This was a bill in equity. It alleged, that before the 20th of January, 1836, Isaac Orr, whom the complainant [Matilda K. Orr] represented, was the inventor of a new improvement in stoves, called the air-tight stove, and on that day obtained a patent therefor. But the specification being made out inaccurately, he caused the patent, on the 12th of November, 1842, to be cancelled, and a new one to be issued [No. 48]. It further averred that the patent was valuable during his life, which terminated in 1844, and had since yielded large sums to her as administratrix. The bill contained further averments as to the violation of the patent by Hunneman & Son, and a recovery of damages in a suit at law therefor, in October, 1843; and that the respondents [James Littlefield and others] had not respected her rights under the patent, but made and sold stoves like those described in his specification; and hence the bill prayed, among other things, for an injunction to restrain the respondents from making or selling any more air-tight stoves, during the residue of the time the patent has to run. The case was heard before Woodbury, J., at Portsmouth, on the 13th of October, when the complainant moved for an injunction, in conformity to the prayer of the bill. In support of this motion, she offered in evidence the patent, which appeared to have been issued, cancelled and re-issued, as stated in the bill; and which claimed the invention to be a new combination of particulars in a stove for heating rooms. She next offered copies of a case in which Isaac Orr recovered damages against Hunneman & Son, for a violation of this patent in October, 1846. She next gave in evidence another recovery of damages and costs against Ira Hazelton, for breach of this patent in May, 1845; and the issue of an injunction in her bill against Badger, for another breach, in October, 1844. After that, she read the affidavits of nine persons, showing that Isaac Orr received about five thousand dollars for licenses and plates to use his stove, the three years previous to his death, and the complainant a like sum since; that the combinations in Orr's stove were new and useful; that his right was unquestioned till the stoves

came into general use; and that all using them since, as well as before, had paid when required, except the persons before named and the respondents, who had made and sold stoves similar to them, and refused to pay for the right now, though in 1844 they had purchased some of the plates, which were given as evidence of license. On the part of the respondents, evidence was then offered that the judgment against Hunneman & Son was rendered on a verdict, taken by agreement of the parties, but without any proof of collusion or fraud. They showed, further. that the judgment against Hazelton was on a default by agreement; and offered the affidavits of four witnesses, stating that the invention of the complainant's intestate was not new, but had been used previously to the original issue of his patent.

S. E. Sewall and Hackett, for complainant. Mr. Hatch, for respondents.

WOODBURY, Circuit Justice. This motion for an injunction is in accordance with a special prayer in the bill; and hence it is properly asked for. Schermehorn v. L'Espenasse [Case No. 12,454]; 2 Story, Eq. Jur. 156. The subject-matter of the bill is, also, one in which it is usual and fit for the court to interpose by this remedy, and on a proper state of facts before a final decision is had on the merits; because every stove sold is an injury if the patent is valid, and without such a remedy,—the supposed offence being constantly repeated,—the causes of action and the multiplicity of suits would probably become much extended, and relief, in that way, prove very defective. Harmer v. Plane, 14 Ves. 130; Livingston v. Van Ingen, 9 Johns. 507, 570; [Osborn v. Bank of U. S.] 9 Wheat. [22 U. S.] 738, 845; Poor v. Carleton [Case No. 11,272]. An injunction, in such a case. proves to be useful as a bill of peace. On the contrary, however, such injunctions are a check on the business of respondents; and interferences subjecting others to a loss before a full trial between the same parties, are not always to be justified. In what cases, then, should injunctions issue? It is not enough that a party has taken out a patent, and thus obtained a public grant, and the sanction or opinion of the patent office in favor of his right, though that opinion, since the laws were passed requiring some examination into the originality and utility of inventions, possesses more weight. But the complainant must furnish some further evidence of a probable right; and though it need not be conclusive evidence.—else additional hearing on the bill would thus be anticipated and superseded,—yet it must be something stronger than the mere issue, however careful and public, of the patent, conferring an exclusive right; as, in doing that, there is no opposing party, no notice, no long public use. no trial with any one of his rights. The kind of additional evidence is this. If the patentee,

after the procurement of his patent, conferring an exclusive right, proceeds to put that right into exercise or use for some years, without its being disturbed, that circumstance strengthens much the probability that the patent is good, and renders it so likely, as alone often to justify. the issue of an injunction in aid of it. Ogle v. Ege [Id. 10,462]; 2. Story, Eq. Jur. 210; Drew. Inj. 222; Phil. Pat. 462. After that it becomes a question of public policy no less than private justice, whether such a grant of a right, exercised and in possession so long, ought not to be protected, until avoided by a full hearing and trial. Harmer v. Plane, 14 Ves. 130. In this case, the evidence is plenary and uncontradicted as to the use and sale of this patent by the inventor and his representative for several years, publicly and without dispute. Computing from the original grant, the time is over nine years, and since the re-issue of the letters patent it is nearly three. I concur in the opinion delivered by Judge Sprague in Orr v. Badger [Case No. 10,587], that the time to be regarded under this view is what has elapsed since the original issue or grant. In Hill v. Thompson, 3 Mer. 622, the time was only three years from the first grant. In Ogle v. Ege [supra], it was but six years. And though in some cases reported, it had been thirteen, and in others twenty years (14 Ves. 130), yet it is believed, that seldom has a court refused an injunction in applications like this, on account of the shortness of time after the grant, however brief, if long enough to permit articles or machines to be constructed by the patentee in conformity to his claim, and to be sold publicly and repeatedly. and they have been so sold and used under the patent without dispute. Here the sales were extensive and profitable from 1836 downwards, and the right as well as the possession does not appear to have been contested till 1842. In Hill v. Thompson, 3 Mer. 622, 624, it is true that the court dissolved an injunction, when only about one year had elapsed since any work had been completed under the patent, and only two years since the specification was filed, the chancellor calling it a patent "but of yesterday;" but, he added, that he would not dissolve it, if an "exclusive possession of some duration" had followed; though an answer had been put in denying all equity, and doubts existed as to the validity of the patent; and no sales under it were proved in that case. So though the patent had been issued thirteen years, and the evidence is doubtful as to acquiescence in the possession or use, an injunction may be refused. Collard v. Allison, 4 Mylne & C. 487. But in the present case, the acquiescence appears to have been for several years universal.

Another species of evidence, beside the issue of the patent itself, and long use and possession under it, so as to render it probable the patent is good, and to justify an injunction, is the fact, that if the patent becomes

disputed, the patentee prosecutes for a violation of his rights, and recovers. Same authorities; Kay v. Marshall, 1 Mylne & C. 373. This goes upon the ground, that he does not sleep over his claims or interests, so as to mislead others, and that, whenever the validity of his claim has been tried, he has sustained it as if good. But such a, recovery is not regarded as binding the final rights of the parties in the bill, because the action was not between them; though when the judgment is rendered without collusion or fraud, it furnishes to the world some strong as well as public assurance, that the patent is a good one. In this view of the evidence of this character in the present action, it is not contradicted, nor impaired at all, by the judgments having been given on verdicts and defaults under agreements. Such judgments, when, as is admitted here, not collusive, are as strong, if not stronger evidence of the patentee's rights, than they would have been, if the claim was so doubtful as to be sent to a jury for decision, rather than to be so little doubtful as to be admitted or agreed to after being legally examined. Both of these circumstances, therefore, possession and judgments, unite in support of an injunction in the present case.

The only answer to the motion as made out on these grounds, is, the evidence offered by affidavits on the part of the respondents, tending to cast doubt on the originality of the invention of the patentee. I say, tending to this, because some of the affidavits, at least, do not distinctly show that the persons making them intended to assert that the whole of any one of the combination of particulars contained in Dr. Orr's claim in his specification, had been used before his patent issued; because, they are counteracted by other testimony, from the witnesses of the complainants, more explicit and in larger number; and because, in this preliminary inquiry, where the evidence is taken without the presence or cross-examination of the opposite party, it would be unsafe to settle and decide against the validity of the patent, when a full and formal trial of it is not contemplated till further progress is made in the case. All that is required in this stage, is, the presumption before named, that the title is good. This presumption is stronger here than usual, as it arises from the issue of the patent and an enjoyment and possession of it undisturbed for several years, beside the two recoveries against those charged with violating it.

After these, other persons can, to be sure, contest the validity of the patent, when prosecuted either in equity or at law; but it is hardly competent for them to deprive the complainant of her right, thus acquired to an injunction, or, in other words, to be protected in so long a use and possession. till her rights are disproved after a full. hearing; surely it is not reasonable to permit it when the affidavits of the respondents to invalidate or cast a shade over her right are met by that which is stronger, independent of the long possession, judgments and presumptions before mentioned. But another objection has been urged in argument. When an answer to the bill denies all equity in it, the respondents contend that an injunction would be dissolved, and hence it ought not to be imposed, if the respondent denies equity by affidavit. This may be correct, in respect to injunctions termed common, as there affidavits and counter affidavits are inadmissible (Eden, 326, 117); yet in these, the denial must be very positive and clear (Ward v. Van Bokkelen, 1 Paige, 100; Noble v. Wilson, Id. 164). But the position cannot be correct in the case of injunctions called special, like the present one, and where facts and counter evidence show the case to be different from what is disclosed in the affidavits or an answer of the respondents alone. No usage or cases are found where the injunctions are dissolved, as a matter of course on such answers, if the complainant has adduced auxiliary presumptions in favor of his right like those in the present instance. On the contrary the cases are numerous where the whole is regarded as still within the sound discretion of the court whether to issue the injunction or refuse it; or if issued, to dissolve or retain it. 3 Mer. 622, 624; 2 Johns. Ch. 202; Poor v. Carleton [Case No. 11,272]; Livingston v. Van Ingen, 9 Johns. 507, 570; Rodgers v. Rodgers, 1 Paige, 426. And where the complainant has made out not merely a grant of the patent, but possession and use and sale under it for some time undisturbed, and beside this a recovery against other persons using it, the courts have invariably held that such a strong color of title shall not be deprived of the benefit of an injunction, till a full trial on the merits counteracts or annuls it. In several cases, where the equities of the bill were even denied, and in others, where strong doubts were raised whether the patent could in the end be sustained as valid, the courts decided, that injunctions should issue under such circumstances as have before been stated in favor of the plaintiff, till an answer or final hearing; or, if before issued, should not be dissolved till the final trial, and then cease, or be made perpetual, as the result might render just. The chancellor in Roberts v. Anderson, 2 Johns. Ch. 202, cites 2 Ves. 19, Wyatt, Prac. Reg. 236, Boulton v. Bull, 3 Ves. 140, Universities of Oxford & Cambridge v. Richardson, 6 Ves. 689, 705, Harmer v. Plane, 14 Ves. 130, and Hill v. Thompson, 3 Mer. 622, 624.

But if this injunction leads to serious injury in suspending works, the court can require security, if desired, of the complainant, to indemnify for it, if the patent is avoided, or can make orders to expedite a final hearing and decision. 4 Paige, 447; 2 Paige, 116. So the defendants can have security given for costs, especially as the plaintiffs live out of the state. Let the injunction issue till after a final hearing; and as the defendants re-

quest it, security be filed by the plaintiffs for costs in thirty days. Injunction granted.

[For other cases involving this patent, see Cases Nos. 10,589 and 10,591.]