## A. R. OWEN *vs.* BRIEN & THAXTON.

### April Term, 1875.

INJUNCTION—MOTION TO DISSOLVE—MERITS.—Upon a motion to dissolve an injunction on the coming in of an answer, it is neither necessary nor proper to decide the case on its merits, especially where the merits turn on grave questions of law arising on conceded facts.

SAME—SAME—CONTROL OF PROPERTY.—Where the effect of dissolving an injunction would be to put the property which is the subject of litigation beyond the control of the court, a dissolution would be a decision on the merits, and, if the court is satisfied that there is a probable right which would be endangered without its interposition, the dissolution should be refused.

CASE IN JUDGMENT.—Where, therefore, the bill was filed to enjoin the execution of a writ to put the purchaser of realty at tax sale in possession, under the recent tax law, on the ground of the unconstitutionality of the act and of various defects in the proceedings, and making out a case of probable right, which would be lost except for the interposition of the court, and the answer admitted the material facts but took issue on the law, a dissolution was refused.

*T. W. Haley*, for complainant.

*M. M. Brien* and *John E. Garner*, for defendants.

THE CHANCELLOR:—This case has been brought before me at chambers, upon a motion made by the defendants, based on the bill and answer, to dissolve the injunction previously obtained on the filing of the bill. The argument in support of the dissolution goes, as it must in such cases, upon the ground that the equity of the bill has been fully met by the answer.

The object of the bill is to prevent the defendants from executing a writ of possession, issued by the circuit court of Davidson county, directing the sheriff to put the defendants in possession of the house and lot in controversy, as the purchasers thereof at a sale made on the 1st of July, 1874, by the tax collector, for the failure of the complainant, as the owner of the property, to pay the taxes assessed and due thereon. The equity of the bill is that the act of the general assembly, under which the proceedings were had, is unconstitutional and void, and that the proceedings themselves are, moreover, on their face insufficient and void. Several defects are specially pointed out as essential statutory requirements to the validity of the sale and judicial proceedings, and, among others, that the figures intended, probably, to represent the value of the property, and the amount of the taxes, are without any sign or mark to show what they stand for. A certified copy of the entry on the minutes of the court, with so much of the schedule embodied therein as relates to the property in controversy, is exhibited with the bill. From this exhibit it appears that the land in controversy is described as " No. — Maple st.," and the value and taxes stated thus :

| Value. | State tax. | School tax. | County tax. | Total tax. |
| --- | --- | --- | --- | --- |
| 1,400.00. | 5.60. | 2.80. | 2.10. | 10.50. |

The equity of the bill, so far as it rests upon the unconstitutionality of the act of the legislature and the defects in the proceedings shown, is matter of law, which can-

not be reached by the denials of an answer. It can only be determined by a hearing of the questions raised upon their merits. But it is not usual, nor ordinarily proper, to determine such questions upon a motion to dissolve the injunction. *Tonson* v. *Walker*, 3 Swans. 679. If there were nothing in the questions, and they were merely resorted to for purposes of delay, the court would not allow them to restrain its action. I had occasion recently to examine the question as to how far the court would undertake to look into the merits of a case in granting or refusing a preliminary injunction. Upon a review of the English and American cases I came to the conclusion that all that a judge should require, upon such an application, is a case of probable right, and probable danger to that right without the interposition of the court, and his discretion should be regulated by the balance of inconvenience or injury to the one party or the other. *Flippin* v. *Knaffle*, 2 Tenn. Ch. 238. It was said in an early case in this state that our courts act upon the same principle in dissolving, that the courts of England do in allowing, an injunction. *Haynes* v. *Hazlerigg*, 1 Tenn. 242. And it is obvious that ordinarily the same principle must regulate both the granting and dissolution of injunctions, except in those cases otherwise controlled by statute, or where the rights of the complainant can be secured by a refunding bond.

Upon a motion to dissolve an injunction, it is neither necessary nor proper for the court to undertake to decide the case upon its merits, for there is no mode, under our system, of correcting his errors, if he should make any, in the conclusions arrived at. No appeal can be taken from such rulings, and, in the meantime, irreparable injury may be done. If the court can see that there is a substantial question to be decided, it should preserve the property until such question can be regularly disposed of. *Great Western R. R. Co.* v. *Birmingham R. R. Co.*, 2 Ph. 602; *Glascott* v. *Lang*, 3 Myl. & Cr. 455; *Shrewsbury & Chester* v. *Shrews-*

*bury & B. R. R. Co.*, 1 Sim. N. S. 410, 426; *Ballard* v. *Fuller*, 32 Barb. 68.

Upon general principles, therefore, the equity of this case resting on questions of grave law, which cannot, of course, be met by an answer, the injunction should not be dissolved if the court should be of opinion that there is a probable right, and probable danger to that right without its interposition. Although I might think the tax law constitutional, and the proceedings under it in substantial conformity with the statute, there is still sufficient doubt to render it proper to preserve the property until the questions can be regularly disposed of, and under such circumstances as to enable the losing party to correct my errors, if any, by appeal.

It is a mistake to suppose that a preliminary injunction will in all cases be dissolved upon the coming in of an answer fully denying the equity of the bill. There are many exceptions to the supposed rule. For the dissolution, like the granting, of an injunction is largely a matter of judicial discretion, to be determined by the nature of the particular case. A dissolution, therefore, does not follow necessarily, and, of course, upon the coming in of the answer denying the material allegations of the bill, and the court may, in the exercise of a sound discretion, refuse a dissolution and continue the injunction to the hearing, where the circumstances of the case seem to demand this course. High on Inj. § 899, and cases cited. One of the circumstances which controls the exercise of discretion in such cases is the probability that a dissolution of the injunction would result in greater injury and hardship than its continuance to the hearing. *Chetwood* v. *Brittan*, 1 Green Ch. 438 ; *Firmstone* v. *De Camp*, 2 C. E. Green Ch. 309 ; *New* v. *Bane*, 10 Paige, 502. A still stronger ground is where the effect of dissolving the injunction would be to place the property which is the subject of the controversy beyond the control of the court in which the action is pending, and would be equiva-

lent to a complete denial of the relief sought by the bill. *Hoagland* v. *Titus*, 1 McCart. 81; *Attorney General* v. *Oakland*, Walk. Ch. (Mich.) 90. The case before us falls precisely within this exception. The bill seeks to have the execution of a writ of possession perpetually enjoined. If, now, I dissolve the injunction, the defendants execute the writ, and the property passes at once beyond the control of the court. If I should eventually hold that the complainant is entitled to a perpetual injunction, I can no longer give him that relief, for the writ has been executed, and a decree for a perpetual injunction would be idle words. I cannot dispossess the defendants, for they have acquired possession, not under the orders of this court, but by a writ from another court; and, moreover, there is no such prayer in the bill. The court has done irreparable wrong, which it cannot redress.

In addition to these general principles, which are conclusive upon the motion, there is a particular charge sustaining established equity not met by the answer. And that is the charge evidenced by the exhibit to the bill—that the figures intended to show the value of the property and the items of tax are without any words or signs showing that they stand for dollars or cents. This is a fatal defect, as held by our supreme court in *Randolph* v. *Metcalf*, 6 Coldw. 400, and by the Supreme Court of the United States, upon tax laws similar to those of this state, in *Woods* v. *Freeman*, 1 Wall. 398. The defendants in their answer deny, it is true, the fact thus charged and exhibited. But the auxiliary evidence of the record, regularly certified, is sufficient to sustain the bill against the unsupported denials of the answer. *Orr* v. *Littlefield*, 1 Woodb. & M. 13. It was incumbent upon the defendants to have supported their denial by a more perfect transcript. The denial of the answer only meets the equally solemn averment of the bill, and the certified exhibit turns the scale.

The motion to dissolve is disallowed.