# THE  STANDARD  OIL  COMPANY *v.* OESER.

EQUITY PRACTICE ; TEMPORARY RESTRAINING ORDERS ;
NUISANCES.

1. The allowance or refusal of an injunction *pendente lite* is largely
   within the discretion of the trial court, and its order will not
   on appeal be disturbed unless manifestly erroneous, *following*
   Electric Lighting Co. *v.* Metropolitan Club. 6 App. D. C. 536.
2. In a suit by property owners to enjoin an oil company from in-
   creasing its plant in a certain neighborhood upon the ground
   that it would aggravate a nuisance which had existed for five
   years or more, an order temporarily enjoining the defendant
   from erecting a proposed new oil tank, and also enjoining it
   from using any of the previously existing tanks, storehouses,
   etc., was *modified* by allowing the defendant to continue to use
   existing structures, and as modified *affirmed.*

No. 666.  Submitted May 4, 1897.  Decided May 10, 1897.

HEARING on appeal by the defendant from an injunction
*pendente lite.*   *Modified and affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an interlocutory order of the Su-
preme Court of the District of Columbia, awarding a tem-
porary injunction pending the suit to restrain an alleged
nuisance.

In the year 1891 a foreign corporation, known as the Bal-
timore United Oil Company, procured permission from the
municipal authorities of the District of Columbia to erect a
warehouse, stable, two tanks for oil, a small office building,
and a boiler house, on the square of ground in the city of
Washington designated as square north of square 697, a
rather sparsely settled region in the southeastern part of the
city, and thereupon proceeded to erect the specified build-
ings—not, it seems, without some protest from the complain-

ant John G. Oeser and others, then already residents of square 697, immediately south of the company's square. In 1892, the Baltimore United Oil Company transferred its rights to the appellant, the Standard Oil Company, which thereupon proceeded to erect another oil tank upon the premises of larger dimensions than those authorized and constructed in 1891, and which has continued ever since that time to use all these oil tanks for the storage of oil, alleged to be of an inflammable and combustible character, and the premises generally for the transaction of its business. It is alleged that, by reason of the danger from explosion, the danger from fire, the offensive odors emitted, and the depreciation thereby of the property of the appellees and others in the neighborhood, the business of the company constitutes a nuisance which should be restrained by injunction, especially in view of the fact that there were in the immediate neighborhood a brick kiln and the roundhouse of the Baltimore and Potomac Railroad Company, by which the danger from fire was greatly aggravated.

In January of the present year, 1897, the appellant company procured from the municipal authorities of the District of Columbia, against the protest of the appellees and other owners of adjacent property, a permit to construct another and yet larger oil tank, which the appellees allege will greatly aggravate the original nuisance and seriously impair their rights; and the company was proceeding with the construction thereof, when it was arrested in its progress by the institution of the present suit, which was commenced by a bill in equity filed by the appellees to restrain the construction of the newly authorized tank, and likewise to restrain the company from the further use of the other tanks and the boiler for the storing of oil therein or the delivery of oil therefrom. Affidavits were filed with the bill in support of its allegations, and a rule to show cause was thereupon issued, and served upon the defendant company.

11 Ct. App.—7

The company filed an answer, or what purports to be an answer—for its execution seems to have been exceedingly defective—and also numerous affidavits, denying that its operations were in any manner a nuisance calling for the intervention of a court of equity.

The court, however, upon the bill and answer and affidavits, and the rule to show cause, made an order for an injunction to last until the final hearing of the cause, by which, in the first place, the company was enjoined and restrained from the further proceeding with the construction of its proposed new tank, and from using it for the storage of oils, and in the second place, the company was enjoined and forbidden, from and after June 1, 1897, from using any of the previously existing tanks, storehouses, or other buildings in the square, for the storage of oils or for the delivery of oils therefrom for removal from the premises. From this order the company has appealed.

*Mr. Clarence A. Brandenburg* for the appellant:

1. Upon the coming in of the answer of the defendant in this case, positively and emphatically denying all the material allegations of the bill as it does, supported by affidavits with equal emphasis denying the averments of the affidavits filed in support of the bill, absolutely nothing remained but to discharge the rule. *Harris* v. *Sangston,* 4 Md. Ch. 394; *Dorsey* v. *Hagerstown Bank,* 17 Md. 408. Anticipated danger from fire is no ground for an injunction to restrain the conduct of any business enterprise. *Duncan* v. *Hayes,* 22 N. J. Eq. 30; *Rhodes* v. *Dunbar,* 57 Penn. St. 274; *Dorsey* v. *Allen,* 85 N. C. 358; *Barnes* v. *Calhoun,* 2 Iredell Eq. 199; *Dunear* v. *Hayes,* 22 N. J. Eq. 25; *Mayor* v. *Radecke,* 49 Md. 218; High on Injunctions, Sec. 742; *Bowen* v. *Manzy,* 117 Ind. 258; *Lake View* v. *Litz,* 44 Ill. 81; *Thornton* v. *Roll,* 118 Ill. 350; *Rouse* v. *Martin,* 75 Ala. 510; *Rounville* v. *Kohlheim,* 68 Ga. 668; *McCutchen* v. *Blanton,* 59 Miss. 116; *Bridge Co.* v. *Utica R.,* 6 Paige, 554; *Morgan* v. *Binghamton,* 102 N. Y. 500.

The allegations of the bill with reference to the alleged noxious gases and vapors are wholly insufficient to warrant the granting of an injunction to restrain the existence or erection of a nuisance. *Adams* v. *Michael,* 38 Md. 134. The alleged depreciation in the value of the property of the complainants as a result of the existence of the lawful enterprise of the appellant is no ground for an injunction. *Rhodes* v. *Dunbar,* 57 Pa. St. 274; *Atty. Gen.* v. *Nichols,* 16 Vesey, 337.

Even assuming the existence of the causes of which the complainants complain, the complainants themselves must be injured thereby, and if they are not, they can not be permitted to complain and certainly cannot be permitted to arrest the conduct of a business enterprise preliminary to final hearing. Wood on Nuisances, Sec. 792; High on Injunctions, Sec. 740.

2. An injunction, unless issued after decree, can only be used for the purpose of prevention and protection and not for the purpose of commanding the defendant ·to undo what he had previously done. *University* v. *Green,* 1 Md., Ch. 97; *Murdock's Case,* 2 Bland Ch. 471.

3. Greater particularity of allegation is required to entitle a complainant to an injunction against a threatened nuisance, than an existing one. The reasons are obvious and clearly set forth in the authorities hereafter cited. There is no allegation that the proposed tank or structure can not be used for any proper and unobjectionable purpose, or that it could not be used in the oil business even in a way wholly unobjectionable. The facts should have been averred from which the court itself could say whether the anticipated nuisance will be of the character supposed. *Adams* v. *Michael,* 38 Md. 124; Wood on Nuisances, Secs. 788, 790; High on Injunction, Sec. 743; *Bowen* v. *Manzy,* 117 Ind. 258.

4. Each and every fact of any importance whatever, upon which the complainants rely in their bill, has been expli-

citly and emphatically denied by the answer. Under such circumstances, but particularly in a case of this character, entailing so serious consequences, it is the invariable practice to discharge the rule issued and to refuse a restraining order before final hearing. *Harris* v. *Sangston*, 4 Md. Ch. 394; *Dorsey* v. *Bank*, 17 Md. 408; *Colvin* v. *Warford*, 17 Md. 433; *Hubbard* v. *Mobray*, 20 Md. 165; *Alexander* v. *Ghiselin*, 5 Gill, 138; *Webster* v. *Hardesty*, 28 Md. 592; *Phila. Trust Co.* v. *Scott*, 45 Md. 451; *Bellona Co's Case*, 3 Bland, 442; *Lynn* v. *Iron Co.*, 34 Md. 304.

The answer was in at the time of the hearing and denied the equities of the bill and its averments must be taken as true. *Dorsey* v. *Bank*, 17 Md. 412; *Trust Co.* v. *Scott*, 45 Md. 45.

To say the very least, the case presented by the complainants, in view of the denial of the defendant, was doubtful, and under such circumstances, it is the practice of the court to deny the injunction—certainly before final hearing. *Adams* v. *Michael*, 38 Md. 129; *Rouse* v. *Martin*, 75 Ala. 510.

5. Wholly independent of the question how far the failure of the complainants to take any action to prevent the erection originally, and after erection, the use, by the defendant of its plant and buildings would operate upon final hearing to completely bar the relief now sought by them, their delay under the circumstances appearing in this case is not merely persuasive, but conclusive upon the complainants that no urgent or imperious necessity exists for a restraining order, preliminary to final hearing, to arrest the conduct by the defendant of its large business enterprise in the District of Columbia. *Simpson* v. *Justice*, 8 Ired. Eq. 115; *Southard* v. *Canal Co.*, 1 N. J. Eq. 522; High on Injunctions, Secs. 756, 786; *Tichenor* v. *Wilson*, 8 N. J. Eq. 197; *Reid* v. *Gifford*, 6 Johns. Ch. 20; *Weller* v. *Smeaton*, 1 Cox. Ch. Rep. 102; *Parker* v. *Winnipiseogee Co.*, 4 Black, 545; *Railroad Co.* v. *Strauss*, 37 Md. 237.

*Mr. C. Maurice Smith* and *Mr. Edwin Forrest* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

The general inexpediency of appeals from interlocutory orders, although authorized in special cases by the statute, is well illustrated in the present instance by the fact that, before the mandatory injunction provided for in the second clause of the order here appealed from, and which is that which most seriously affects the appellant, could by its own express terms go into effect, testimony might have been taken and the cause heard upon its merits, if ordinary diligence had been had in its prosecution. Yet, as we have said, the case is one in which the statute authorizes an appeal from the interlocutory order rendered in it.

We have to deal in the cause with that most unsatisfactory of all legal contests, a battle of affidavits, from which there is almost always absent the test of truth furnished by regular examination and cross-examination of witnesses. And we have likewise to deal with that which is necessarily more or less a matter of discretion with the court below. For the allowance or refusal of an injunction *pendente lite* is not always to be determined by rigid rules, invariable and immutable in their application; nor does it depend wholly or exclusively even upon the preponderance of evidence, but upon the sound discretion of the court and the inherent probabilities and possibilities of the case under consideration according to its own circumstances, although of course the complainant must always show a *prima facie* case for it. *Reddell* v. *Bryan,* 14 Md. 444; *Roberts* v. *Anderson,* 2 Johns. Ch. 202; *Sheldon* v. *Rockwell,* 9 Wis. 167; *Potter* v. *Chapman,* Ambler, 99, by Lord Chancellor Hardwicke.

What we said in the case of *The Electric Lighting Company* v. *The Metropolitan Club,* 6 App. D. C. 536, is applicable here. There it was said: " An injunction *pendente lite* is

only a conservative measure intended to preserve existing conditions and to save all rights until the merits of the controversy can be judicially ascertained by such proofs as the parties may be able to adduce."

And again: "We should not lightly disregard the action of the court below, or reverse that action, unless it is made very plain to us either that such action was erroneous, or that it is in the interest of justice that it should be vacated. One who appeals from a merely interlocutory order should therefore show a very strong case to overthrow action intended in its very nature to give the court reasonable opportunity to determine the question of right in the controversy between the parties."

Reference also may be had in the same connection to the cases of *Parker* v. *Winnipiseogee Co.*, 2 Black, 545; *Irwin* v. *Dixion*, 9 How. 28; *Great Western Rwy. Co.* v. *Birmingham, etc., Rwy. Co.*, 2 Phillips, 602; *Andrè* v. *Redfield*, 12 Blatchf. 408; *Peterson* v. *Matthis*, 3 Jones (N. C. Eq.), 31.

Now, while in one aspect of this case a difficulty is presented by the apparent acquiescence of the appellees for five years and upwards in a situation which they now regard as a dangerous nuisance, it is very clear that a condition of things, which common experience shows not to be free from the dangers which they apprehend, may be very greatly aggravated by the construction of new and larger works, and by an increased accumulation of inflammable and explosive materials. It may well be that parties will acquiesce in a small annoyance, while aggravation of such annoyance will constitute an intolerable nuisance such as to justify a recourse to the courts for protection. The statements of the bill of complaint in this regard undoubtedly presents a *prima facie* case for temporary injunction; and we think that the court below was fully warranted in its assumption that it should prevent for the time the construction of the new works projected by the appellant and preserve the existing conditions until due inquiry should be

had into the rights of the respective parties in the due course of legal procedure.

But there is in the order of the court below not only the conservative provision stated in the first clause of the order for the preservation of existing conditions, but also in the second clause a provision for a mandatory injunction that has the effect of decreeing a total cessation of the appellant's business upon its premises after June 1, 1897. For this, we find no sufficient warrant in the bill of complaint. That bill does not state such a cause of apprehension of impending disaster or peril as would justify this extraordinary remedy. The business of the appellant has been carried on for five years and upwards without serious injury to the appellees, and without protest from them—certainly without any legal action taken by them to abate the prosecution of the business as a nuisance. There is no ground shown for an immediate and radical change in the situation such as a mandatory injunction of this kind would work.

In the case of *Cole, etc., Co.* v. *Virginia, etc., Co.*, 1 Sawy. 470, Mr. Justice Field said, "that a mandatory injunction will not be granted upon motion, except where irreparable injury will result before a final decree can be entered."

There is no showing in the present case of any such irreparable injury as likely to result before final decree; and it is not apparent how there well could be, in view of the fact that there has been apparently no substantial change in the situation for upwards of five years, and the appellees during all that time have acquiesced in it.

From what we have said, it follows that, in our opinion, the order appealed from should be modified by the omission therefrom of the second clause, and that with such modification it should affirmed. The cause, therefore, will be remanded to the Supreme Court of the District of Columbia, with directions to vacate so much of said order as is contained in the second clause, and which purports to

enjoin and restrain the appellant from the use of its property, as therein specified, from and after June 1, 1897, and for such further proceedings in the cause as may be just and proper. Each party will pay his own costs on this appeal. *And it is so ordered.*